Good morning. May it please the court, I'm Matt Adams with Northwest Immigrant Rights Project on behalf of the petitioner, Edmundo Lopez. When he was deported in 1994, based on his drug conviction, he was a lawful permanent resident. Thereafter, on two separate occasions, he unlawfully re-entered the United States. It was only after the second occasion, when the federal judge dismissed the criminal re-entry charges against him, and he was transferred to the custody of immigration, that he had an opportunity to discover the appropriate mechanism for challenging that 94 order, a motion to re-open. Now, the Board of Immigration Appeals' decision took issue with, or denied, his appeal on only one basis. I'm wondering, though, I mean, obviously, a pivotal point here is that you're claiming that he should have been advised that he was eligible for 212C relief. He didn't have seven years. And, you know, it seems, why isn't that the same thing as that judges have to advise people that in five years, maybe someone will pass a law that will allow you to stay here? I mean, he wasn't eligible. I mean, that seems to be the elephant in the room here. I would respond with two points. One is that the board accepted a due process violation. Well, you take the position that they found it, but it seems to me that they assumed it and then got to the merits, but they didn't actually find a due process violation. That is correct. They didn't explicitly find there was a due process violation. They said, accepting that there is one. Okay. That's assuming without finding. Right. Assuming that that is the case, he failed to exercise due diligence. They said equitable tolling would be appropriate, but only until 2004. And given that the board's decision did not deny his appeal on that basis, this court, pursuant to its own case law, pursuant to Supreme Court law, like SEC versus Chanery, may not affirm the board's decision on any other basis, on a basis which the board did not rely. But going back to the actual merits of that 212C claim, at the time he appeared in a group hearing before the immigration judge, unrepresented, he was a few months shy of those seven years. Are you sure it was not three years? Yes. And the reason he became a lawful permanent resident in 1990, December 1st, as part of this legalization program, but he became a temporary resident back in 1987. And this court's case law has clarified, as well as the other circuits, that that temporary resident status also counts towards those seven years. So at that time when he appeared in his group hearing, he was just a few months shy. But he's still not eligible. However, case law has also clarified, both by the court and by the Board of Immigration Appeals, that while a person is in proceedings, even if he had been ordered deported by the immigration judge and had appealed that, he would continue to accrue that time. And so if this unrepresented individual had seen any competent attorney, that attorney would advise him, you are, for all purposes, eligible for 212C because we're going to have to file this application. By the time you're scheduled for your final hearing, you'll already have your seven years. And even in worst-case scenario, if you didn't have your seven years, when we file this appeal to the board, you will certainly have your seven years. All of these issues... Even if you go to the Ninth Circuit, you'll have 20 years by the time your case is done, right? That was the law at the time. And, of course, the new law no longer allows individuals to continue to accrue time. And the board was presented with these arguments and all the reasons why it was improper for the immigration judge to not present him with this opportunity to apply for 212C relief. And I think that's one of the reasons the board said, okay, even accepting, assuming there was a due process violation, we'll conclude that equitable tolling is the appropriate constitutional remedy, that it's only viable up until December of 2006 when he was assigned a federal defender to defend him in these criminal proceedings. But the federal defender, the criminal defense attorney, had no obligation, no responsibility to be involved at all in the immigration matter. And it wasn't until eight months later, when he was transferred to the immigration custody, that he had access to the board's own program, this legal orientation program, which advised him of the proper mechanism. And so we are challenging just this isolated finding by the board, that it failed to lawfully implement this doctrine of equitable tolling. Now, the government seeks to direct our attention to the reinstatement order, cuts the legs out from this motion to reopen, even though the reinstatement order was filed after the motion to reopen. Now, neither the immigration judge nor the board denied the original motion or the appeal based on the fact that Mr. Adams wasn't the proceeding for reinstatement, if not the order, the proceeding pending before he moved to reopen. So if we accept your position, it seems to be suggesting that any time this, at least quasi-summary, remedy of reinstatement is started, that someone could throw a monkey wrench in it by moving to reopen some long-past deportation case. Well, typically a reinstatement proceeding only takes a day or two days. And that's because all you have is an immigration official, not a judge, looking at the file, saying this person has already been lawfully deported or ordered deported or removed and has unlawfully reentered, and therefore we can reinstate the order. He prepares it, presents it to his supervisor, who signs off on it. In this case, the initial notice has a date on it in June, before he was even in the custody of immigration. Certainly Mr. Lopez at that time had no knowledge of any reinstatement proceeding. This is just a government form that they created. Because in a reinstatement proceeding ---- The date on that form, however, before the date of his motion to reopen? The date at the top of the form, when it was first created, is June 21st, 2007. And his motion to reopen was not until August 20th. But it's the date the decision was issued at the bottom, August 28th, eight days after he had filed his motion to reopen. That is when the reinstatement order was issued. But one of the things we would like to point out is, in Morales y Esquerdo, where this court en banc clarified that a person could not collaterally challenge their underlying deportation order by seeking a petition for review of a reinstatement order, the court said the reason the reinstatement process does not offend constitutional notions of due process is because it does not impact this person's access to any other remedies. If I may quote from the court on just one statement there, it said, the reinstatement order imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order, and does not diminish petitioner's access to whatever path for lawful entry into the United States might otherwise be available. Even if this court were to affirm the reinstatement order, Mr. Lopez has already been deported to Mexico pursuant to this order. That's where he is. He's in Mexico. He's not simply seeking to delay the inevitable. A pursuant to this court's decision in Morales y Esquerdo, even if the reinstatement order was lawfully executed despite the fact that it occurred after the motion to reopen, even if that's the case, he should still be able to move forward on his motion to reopen. Well, let's assume he granted your petition regarding the motion to reopen. How would petitioner demonstrate entitlement to 212C relief, a 212C relief waiver in light of the subsequent convictions for two crimes involving moral turpitude and the court's recent en banc ruling in Abibi? So on the two separate issues, although I would like to say one response with regards to both of those issues is that was not the basis, obviously, for the board's decision. And since the board didn't have an opportunity to address those decisions, this court should not affirm the board's decision on a separate rationale. May I take your answer that he wouldn't be able to show entitlement for relief in light of Abibi? No. No, that's not my answer. Going to the merits of both of those points, first with Abibi, in Abibi, certainly this court three weeks ago in its en banc decision announced that 212C relief was no longer available for many persons in removal proceedings. But this court's decision does not explicitly invalidate the governing regulation at 8 CFR 1212, and that's where the department issued this regulation to implement the Supreme Court's decision in St. Cyr that 212C relief was available for persons who at that time were entitled to it when they pled guilty. And in this case you want to save a half a minute for rebuttal or? Yes, thank you. I'm pulling out, but it's up to you. Good morning. Good morning. My name is Amy Fredrickson. I'm an attorney with the Department of Justice, and I represent the Attorney General in this matter. Somewhere in the midst of your argument, just please touch on how Chenery affects the issues we've got, which was raised in the Petitioner's argument. Okay. This case has a long and complicated procedural history. This is the Petitioner's third removal. It's his third appearance before this Court, second time in immigration proceedings, and he also had an appearance in a related criminal matter for a legal reentry. Now, this is a consolidated case, and in both of the Petitioner's appeals, he seeks to collaterally challenge his original removal. In one, the Petitioner appeals the reinstatement order and seeks to collaterally attack the underlying order on due process grounds, and in the other, the Petitioner appeals from the board's denial of his motion to reopen his original proceedings. Now, the government contends that because this is a reinstatement case, and also because the Petitioner is an aggravated felon, that the Court lacks jurisdiction to review his claims. Examining the motion to reopen, the statute clearly bars the consideration of a motion to reopen once the Department of Homeland Security reinstates removal. Now, the only case in this Court that really addresses this question found that if a Petitioner was eligible to have her case reinstated, but DHS did not actually reinstate the case, then she could have her motion to reopen reviewed. Now, this is a different case because DHS actually reinstated the original removal order. Once that, and the government holds that once that, the original removal order is reinstated, that he can no longer seek a motion to reopen. I think it's worth pointing out in this case that the notice to appear was issued in August 2006, which is a full year before he filed a motion to reopen. And it was also a full year before the government served him with the papers reinstating his original removal order. So he had a full year where he could have sought reopening of his original claim but failed to. Additionally, even if the Court finds that they can still review a reinstated removal order once the motion is reopened, there's still really exactly no after the Real ID Act. I mean, you cite a section that says that they can. But we don't really know whether the Real ID Act under 12, I guess it's 1252 AD 2D, restores if we have jurisdiction at least for the purposes of considering a constitutional or legal challenge underlying the removal. I mean, there's nothing specifically on that. Right. The Court has not explicitly decided how the Real ID Act applies in the context of reinstated removal orders. What the Court has found is that while it may restore some limited jurisdiction, that the petitioner needs to demonstrate that there is a gross miscarriage of justice, and also they'd have to demonstrate that the Court would otherwise have jurisdiction under Section 1252 because the Real ID Act itself is limited, saying that only cases that are not limited by jurisdictional claims within 1252 itself. So in the motion to reopen, this is significant because the petitioner is an aggravated felon, and Section 1252 A2C removes jurisdiction from the Court for certain types of criminal aliens who are removed for that basis. Before the Real ID Act, the Supreme Court said that the plain language of 8 U.S.C. Section 1252 A2C fairly explicitly strips the Court of appeals of jurisdiction. Now, with the motion to reopen, the only question that the petitioner is raising is a question of fact, not a question of law or a constitutional claim. He is arguing that the Board erroneously found that he was aware of the due process violation in December 2006, and he's arguing that he wasn't aware until August 2007. This is indifferent in dates. It's a factual dispute, and therefore the Real ID Act would not restore jurisdiction to this question. Because he's an aggravated felon, the Court should not have jurisdiction over the motion to reopen, even if the Court concludes that it's not stripped of jurisdiction over the motion to reopen. Now, if we're deciding if we just assume for a purpose that we can't examine it for a miscarriage of justice, counsel has said we shouldn't concern ourselves with the fact that he didn't have the seven years. What's your position on the relevance of that? The government's position is that there cannot be a gross miscarriage of justice where he's plainly not eligible for the relief that he sought. Are you claiming it was more than a few months before he was eligible, or did I read that wrong? Well, the interesting point is that the law that the petitioner relies upon in finding that he was only eight months shy, it was based on case law that wasn't issued until after the petitioner had been deported the first time. At the time of his original removal proceedings before the immigration judge, the law was clear that the petitioner had to be actually a legal permanent resident and not merely a temporary resident. Now, the case law that called that into question wasn't issued until after the petitioner had already been deported. So at the time, he wasn't only eight months shy, he was three years shy. And additionally, the case law that the petitioner relies upon that states that the petitioner would continue to accrue time during his appeal, that case law also wasn't clearly decided until after the petitioner had been deported. So the Court really has two options. It can either analyze his 212C claim under the state of the law at the time where he was three years shy, there's plainly not a due process, we hold that there's not a due process violation, but even if for some reason there is a due process violation, it's clearly not a gross miscarriage of justice because he was three years shy of 212C. Or the Court can analyze his claim based on the current case law, in which case we believe that Abebe completely removes any eligibility for 212C because he was in deportation proceedings, he was not seeking admission. So back to my first comment or question. Is Chenery, which Mr. Adams argued, a barrier to our considering the miscarriage of justice issue in the light that you're presenting it? I don't think it is, because there's, well, there's two different points. One is there are two different cases here, and only one case has a board decision. The case that has a board decision is the motion to reopen. And in that case, the board assumed that there was a due process violation, made the finding on factual grounds, and the government believes that the court does not have jurisdiction to review any factual grounds because the petitioner is an aggravated felon. Chenery wouldn't bar any findings for the reinstatement case because, well, first of all, there's not a board decision. The reinstatement process, DHS issues the reinstatement order, and then the petitioner appeals directly to this court, and the court then would decide its own jurisdiction based on the statute in the Real ID Act and the board's, the basis of the removal order. In that case, Chenery wouldn't bar any considerations for gross miscarriage of justice, the gross miscarriage of justice standard. In reinstatement cases, the court only has limited jurisdiction to review whether the petitioner is an alien who was previously removed from the United States and who reentered illegally. In this case, the petitioner has conceded all three of those facts and therefore only is challenging the reinstatement order on these, on the grounds that there was a due process violation in the original proceedings. The government holds that you do not have jurisdiction under Section 231A5 to review that, that Morales-Izquierdo clearly stated that there's not a need because he had other venues. He could have, for example, appealed his original proceedings to the board, and the government also contends that because he did not appeal those original proceedings to the board, he failed to exhaust his administrative remedies, which is another bar under Section 1252 and therefore further bars the court's jurisdiction in this case. Because the petitioner is an aggravated felon, he seeks to collaterally attack his prior order of removal. The court lacks jurisdiction and the court should therefore dismiss his petition for review. Thank you, Ms. Rivers. That concludes the government's argument. Mr. Adams, I think you've got about 40 seconds. Thank you. Petitioner does not seek to collaterally challenge the underlying order in the petition for review of the reinstatement order. That petition for review is only challenging whether the government can reinstate, issue a reinstatement order when you already have a motion that's pending or an adjustment claim or any other type of application that's pending. And then with regards to the board's decision, the board based its decision on solely one basis, and that is the exercise of due diligence. I think this goes back to Judge Callahan's question whether it's done with a BB and seeing what the appropriate interaction of the continuing validity of this regulation is or whether it's regards to do these new convictions bar him from 212C relief, and if so, is he also able to combine that with an application for cancellation? These are all issues that should be considered by the agency in the first instance before review by this board, this court. Thank you. Thank you, Mr. Adams. We appreciate the strong and helpful argument of both parties.
judges: Beezer, Gould, Callahan